## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

EDDIE CARR,      )
           )
    Plaintiff,    )   No. 18-cv-05938
           )
  v.         )   Judge John F. Kness
           )
CITY OF CHICAGO and    )
OFFICER JEREMY L. RICE,   )
           )
    Defendants.   )

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1983, plaintiff Eddie Carr brings various civil rights and state tort claims against individual defendant Jeremy L. Rice, an officer of the Chicago Police Department, for injuries sustained after Rice allegedly launched an unprovoked attack on Carr at a graduation ceremony thirty miles from the City of Chicago. (R. 27, Am. Compl.))[1] In addition to the individual claims against Rice, Carr also seeks to hold the City of Chicago liable for Rice's actions under the *Monell* doctrine. Specifically, Carr alleges that Rice's misconduct was caused in part by the City's perpetuation of a police code of silence and its failure to properly investigate complaints against City police officers, including Rice.[2] Carr also asserts various state-law theories against the City, including claims for willful and wanton conduct,

---

[1] Federal question jurisdiction exists under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number.

[2] Carr asserted a second *Monell* claim specifically for failure to investigate (Count 4), but he later voluntarily withdrew it in his response brief. (R. 41, Pl.'s Resp. Br., at 14.)

battery, indemnity, and *respondeat superior*. Contending that Carr has failed to state a viable claim for relief, the City now moves to dismiss all claims against it. (R. 36, Mot. to Dismiss.)

Carr's own allegations—even following the amendment of his Complaint—show that no alleged policy or custom of the City (even if proven) was the moving force behind Rice's alleged unlawful conduct, which occurred miles from the place where Rice served as a police officer. Accordingly, for the reasons explained below, the City's motion is granted.

## I. BACKGROUND

In resolving this motion, the Court accepts as true the factual allegations of the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). On May 24, 2018, Carr attended an elementary school graduation in Park Forest, Illinois, a village located approximately 30 miles south of Chicago. Am. Compl. ¶ 7. Carr alleges that, as he was leaving the elementary school area, Officer Rice attacked him without any cause or provocation. *Id.* ¶ 14. At the time, Officer Rice had on his Chicago Police uniform under a sweatshirt, but he was wearing his Chicago Police star and badge around his neck and was carrying his duty weapon. *Id.* ¶¶ 8-9. Carr also "knew Rice was a police officer." *Id.* ¶ 12. According to Carr, the sequence of events went like this: Carr was leaving the elementary school when Officer Rice yelled at him and exposed his weapon to him; Carr stopped; Officer Rice then attacked Carr by striking him multiple times and knocking him to the ground. *Id.* ¶¶ 10-16. When a witness threatened to call 911, Officer Rice allegedly held up his police badge and said, "I

2

don't give a f***, I am the police." *Id.* ¶ 17. Eventually, Park Forest Police Department officers arrived on the scene, arrested Officer Rice, and charged him with misdemeanor battery. *Id.* ¶¶ 19-20. As a result of the encounter, Carr suffered injuries to his eye, shoulder, arm, and knee. *Id.* ¶ 18.

Carr alleges that this was not his first encounter with Officer Rice. Am. Compl. ¶ 21. Specifically, at some point before May 24, 2018, Rice had allegedly "threatened to shoot" Carr. *Id.* Carr also alleges other misconduct by Rice: between October 2017 and May 2018, "there were at least four misconduct complaints against Defendant Rice for actions he took as a police officer." *Id.* ¶ 22. According to Carr, none of these complaints was sustained by the City's Civilian Office of Police Accountability or Internal Affairs, and Rice had not been disciplined nor restricted from carrying his weapon, wearing his uniform, or performing his job as a police officer. *Id.* ¶¶ 23-25.

## II. STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotation marks omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578

F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations are entitled to the assumption of truth, but not mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III.   ANALYSIS

### A.    *Monell* Claim (Count 3)

Under *Monell v. Department of Social Services of New York*, a municipality may be held liable on a § 1983 claim only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." 436 U.S. 658, 694 (1978). To state a *Monell* claim, a plaintiff must prove: (1) the deprivation of an underlying substantive constitutional right; (2) the existence of an official policy or other governmental custom; and (3) that this policy or custom was the moving force behind the deprivation of his substantive constitutional rights. *See Teesdale v. City of Chi.*, 690 F.3d 829, 833 (7th Cir. 2012).

Carr premises his *Monell* claim on the theory that the City maintains a "code of silence." Am. Compl. ¶ 47. This "code of silence," according to Carr, is an "implicit

understanding between and among members of the CPD resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn peace officers." *Id.* Embedded within this "code of silence" are several additional alleged "*de facto* policies, practices and/or customs*," including:

      a. Concealing and/or suppressing officer misconduct (both on duty and off duty misconduct), including the use of unlawful force;

      b. Defective and biased procedures for investigating complaints, including excessive force and domestic violence complaints, against officers;

      c. Failure to maintain accurate and complete records of complaints and investigations of misconduct; and

      d. Failure to turn over and disclose complete records of complaints and investigations of misconduct.

Am. Compl. ¶¶ 42-46.

In support of his code of silence theory, Carr points to statements from both a Chicago City Council member as well as former Chicago Mayor Rahm Emanuel acknowledging the existence of a code of silence within the Chicago Police Department. Am. Compl. ¶¶ 27-28. Moreover, alleges Carr, the City acted in accordance with the code of silence when it "chose not to thoroughly investigate and/or discipline Rice after the complaints against him" prior to the May 2018 incident. *Id.* ¶ 48. Specifically, Carr alleges that the City "failed to conduct proper administrative investigations" into complaints filed against Rice and "failed to lawfully and/or properly adjudicate the administrative investigations against" complaints filed against Rice. *Id.* ¶ 49. This, according to Carr, "proximately

result[ed] in the culture and endemic attitude among members of the CPD, including Officer Rice, that they may engage in misconduct against citizens of Chicago with impunity, and without fear of official consequence; they consider themselves 'above the law.'" *Id.* ¶ 50.

But even if these facts are read in the light most favorable to Carr, the Complaint still does not plausibly allege that the City's policies were the *moving force* behind Carr's injuries in this case. Carr argues that the City's code of silence "emboldened Rice to believe that he was 'above the law' and could use his police training, authority and presence to attack Carr." Pl.'s Resp. Br. at 12. Specifically, "the failure to thoroughly or promptly investigate prior complaints against Rice, the code of silence, the lack of any discipline against Rice, and the culture of ignoring citizen complaints or slow rolling investigations, led Rice to believe he was 'above the law' and could act with impunity" when he attacked Carr in May 2018. *Id.* at 14. In essence, Carr's theory is that Rice felt emboldened to attack Carr because, based on past experience, Rice knew he would not be investigated or disciplined by the City for his actions, and he knew he would be able to count on his fellow CPD officers to protect him in accordance with their code of silence.

A fatal defect in this theory is that the alleged attack occurred in Park Forest, not Chicago. Geography matters here because, assuming that Rice did feel "emboldened" to engage in misconduct due to the policies and customs of the City, there is nothing to suggest that he would have felt "emboldened" to engage in misconduct *outside* of the City. Carr points to Rice's exclamation during the attack

("I don't give a f***, I am the police") as evidence that "the City created an officer who felt he could mistreat citizens with impunity." Pl.'s Resp. Br. at 12. This exclamation is certainly alarming, and if these events had occurred within Chicago, perhaps Carr's case would be plausible; in that context, a CPD officer who knew the City had a history of failing to discipline misconduct and knew he could count on his fellow CPD officers to protect him could certainly feel emboldened to mistreat Chicago citizens without expecting any negative repercussions.[3]

But here, the statement alone is not enough to suggest plausibly that Rice believed he was "above the law" in Park Forest, nor that he truly expected to get away with any misconduct in Park Forest. Carr does not allege that the Park Forest Police Department failed to investigate or discipline Rice in the past, such that Rice could expect to engage in misconduct in Park Forest with impunity. Nor does Carr allege that a "code of silence" existed *between* Park Forest and Chicago officers that would have allowed Rice to believe he could count on Park Forest officers to protect him if he attacked Carr. If anything, what Carr has chosen to plead suggests the opposite: Rice was *arrested and charged* with a misdemeanor by the Park Forest Police Department when he attacked Carr. Am. Compl. ¶¶ 19-20. That the facts Carr has pleaded show that Rice was taken into custody following the incident seriously undercuts any claim that Rice could reasonably have felt emboldened due to the City's alleged policies and practices.

---

[3] Indeed, both cases that Carr cites in support of his "moving force" argument involved *Monell* code of silence claims based on misconduct that took place within the City of Chicago. *See LaPorta v. City of Chicago*, 277 F. Supp. 3d 969 (N.D. Ill. 2017); *Obrycka v. City of Chicago*, 2012 WL 601810 (N.D. Ill. Feb. 23, 2012).

Because Carr has not adequately alleged that the City's policies were the "moving force" behind his injuries,[4] his *Monell* claim must be dismissed.

### B.    Willful and Wanton Conduct Claim (Count 5)

Carr also asserts a claim against the City under Illinois law for willful and wanton conduct. Under Illinois law, a plaintiff pleading willful and wanton misconduct "must establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010) (citing *Krywin v. Chi. Transit Auth.*, 909 N.E.2d 887, 890 (Ill. App. Ct. 2009)). In addition, the plaintiff must show that the breach was not merely negligent but committed with "conscious disregard for the welfare of the plaintiff." *Doe-2*, 593 F.3d at 514 (citing *Doe ex rel. Ortega–Piron v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004)). As described in the *Monell* analysis above, Carr has not adequately alleged a causal connection between the City's policies or customs and his injuries in the Park Forest attack. Thus, the willful and wanton claim must also fail.

### C.    Agency Claims (Counts 7-9)

Carr's final three claims against the City are all premised on the same theory of vicarious liability: namely, that because Officer Rice was acting within the scope of his employment with the City of Chicago when he allegedly attacked Carr, the City is liable for battery, indemnity, and *respondeat superior*. But Carr has failed to allege

---

[4] The parties have not substantially addressed the "constitutional deprivation" element of the *Monell* claim, so the Court does not address that issue here and assumes for purposes of this motion that the underlying alleged constitutional deprivations—Carr's excessive force and unlawful seizure claims against Rice—are valid.

plausibly that Rice was acting within the scope of his employment, so these claims must all fail.

All three claims—vicarious liability for battery, indemnity, and *respondeat superior*—require Carr to show that Rice was acting within the scope of his employment during the attack. To do so, Carr must show that Rice's conduct (1) was of the kind he is employed to perform; (2) occurred substantially within the authorized time and space limits; and (3) was actuated, at least in part, by a purpose to serve the City. *See Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989). When an employee acts only to promote the employee's own personal interests, then the employee is not acting within the scope of employment. *Lyons v. Adams*, 257 F. Supp. 2d 1125, 1140 (N.D. Ill. 2003). All three criteria must exist in order to find that an employee was acting within the scope of his employment. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009).

Carr cannot satisfy these requirements. To begin, Carr's factual allegations do not plausibly suggest that Rice's unprovoked attack took place within the authorized time and place limits of Rice's employment as a Chicago Police Officer. Carr is correct in noting that Rice's off-duty status alone is not dispositive; so too with regard to the fact that Rice was outside the jurisdictional limits of the City of Chicago. Pl.'s Resp. Br. at 6-7. But *both* conditions were present. *See Anderson v. Moussa*, 250 F. Supp. 3d 344, 348 (N.D. Ill. 2017) ("[Plaintiff] points to no case in which a police officer who was *both* off-duty *and* far outside his jurisdiction was held to be acting within the scope of his employment"). Carr also argues that "it is plausible that Rice was

9

intending to stop, arrest, handcuff, question or otherwise use his police authority against Carr, thus serving the interest of the City" and that "[a] jury may well find that he was acting, at least in part, to serve a law enforcement purpose." Pl.'s Resp. Br. at 7. The Court disagrees. There is no indication that Rice was attempting to prevent a crime or respond to an emergency. *Garcia v. City of Chi.*, 2003 WL 1715621, at *11 (N.D. Ill. Mar. 20, 2003). Rather, Rice allegedly attacked Carr "[w]ithout any cause or provocation" at an elementary school graduation in Park Forest. Am. Compl. ¶ 14. *See Garcia*, 2003 WL 1715621, at *11 ("[A]n unprovoked attack and beating of a citizen is an action obviously different from those [the officer] was authorized to perform") (citation and quotation marks omitted). Moreover, there is some suggestion that the attack stemmed from a personal dispute: Carr "knew Rice was a police officer" even though Rice had a sweatshirt on over his police uniform, and Rice had previously "threatened to shoot" Carr. Am. Compl. ¶¶ 12, 21. In any event, all of this taken together suggests that Rice was not acting within the scope of his employment.

Indeed, the Seventh Circuit recently came to the same conclusion in a case with a closely similar fact pattern. In *Elston v. County of Kane*, the Seventh Circuit applied these same agency law principles to hold that an off-duty deputy of the Kane County Sheriff's Office was not acting within the scope of employment when he attacked a civilian in neighboring DuPage County. *Elston v. County of Kane*, 948 F.3d 884, 887-88 (7th Cir. 2020). Affirming the district court's grant of summary judgment in favor of the County, the Seventh Circuit explained that the conduct did not occur within the time and space limits authorized by the deputy's employment, because the

deputy was, as here, both off-duty *and* outside of his jurisdiction when he attacked the plaintiff. *Id.* at 887-88. And as relevant here, the Seventh Circuit concluded that the deputy could not have been acting with a purpose to serve his employer because the "Kane County Sheriff's Office had no interest in maintaining the peace in a *neighboring* county," nor was the deputy responding to any sort of emergency.[5] *Id.* at 888 (quotation marks omitted).

Like the deputy in *Elston*, Rice was not acting within the scope of his employment with the City of Chicago. Accordingly, Carr's remaining state law claims against the City of Chicago must be dismissed.

## IV.   CONCLUSION

For the reasons stated above, the City's motion to dismiss is granted in its entirety. Accordingly, no claims remain against the City, and only the claims against Officer Rice remain. Because Carr has already amended his complaint once—an amendment that rendered moot an earlier motion to dismiss brought by the City of Chicago—this dismissal is with prejudice.

---

[5] Carr contends that *Elston* is "inapplicable" here for at least two reasons: *first*, because it was decided on a motion for summary judgment, not a motion to dismiss; and *second*, because Rice "maintained full police authority and power to act because Park Forest is a Chicago Police district." (Dkt. 77 at 2-4.) To begin, the Court recognizes the different procedural posture under which *Elston* was decided, but the point remains the same: under the facts Carr has pleaded, *Elston* suggests that, as a matter of law, Rice did not act within the scope of his employment. As to Carr's second point, Park Forest is not a "Chicago Police district." Illinois law makes clear that full police authority exists only within adjoining municipalities that are in the same county, *e.g.*, *Harroun v. Addison Police Pension Bd.*, 865 N.E.2d 273, 278 (Ill. App. Ct. 2007). But as the Court judicially notices under Rule 201 of the Federal Rules of Evidence, Park Forest does not adjoin any portion of the City of Chicago. Contrary to Carr's assertion, therefore, Rice did not possess "full police authority and power to act."

SO ORDERED in No. 18-cv-05938.

Date: August 25, 2020

_____

JOHN F. KNESS
United States District Judge